UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHARLES WEBB,

           Plaintiff,

                    Case # 17-CV-6417-FPG

v.

                    DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

## INTRODUCTION

  Plaintiff Charles Webb brings this action pursuant to the Social Security Act seeking review of the final decision of the Acting Commissioner of Social Security that denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

  Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11, 16. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

  On August 27, 2013, Webb protectively applied for DIB and SSI with the Social Security Administration ("SSA"). Tr.[1] 173-85. He alleged disability since July 25, 2012 due to knee and back pain, diabetes, hypertension, asthma, sleep apnea, mental health problems, and gout. Tr. 211. On October 1, 2015, Webb and a vocational expert ("VE") testified at a hearing before Administrative Law Judge Brian Kane ("the ALJ"). Tr. 37-84. On November 25, 2015, the ALJ

---

[1]   References to "Tr." are to the administrative record in this matter.

1

issued a partially favorable decision in which he found Webb disabled as of February 15, 2015, but not as of Webb's alleged onset date of July 25, 2012. Tr. 12-30. On April 28, 2017, the Appeals Council denied Webb's request for review. Tr. 1-3. Thereafter, Webb commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. 20 C.F.R. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

**I.    The ALJ's Decision**

The ALJ's decision analyzed Webb's claim for benefits under the process described above. At step one, the ALJ found that Webb had not engaged in substantial gainful activity since July 25, 2015, the alleged onset date. Tr. 14. At step two, the ALJ found that Webb has the following severe impairments: degenerative disc disease and osteoarthritis of the knee. Tr. 15-19. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal an impairment in the Listings. Tr. 19-20.

Next, the ALJ determined that before February 15, 2015, Webb retained the RFC to perform light work[2] and stand and walk for up to four hours each during an eight-hour workday. Tr. 20-26. Beginning on February 15, 2015, the ALJ found that Webb retains the RFC to perform sedentary work[3] and cannot lift more than ten pounds or work over 30 hours per week. Tr. 26-27.

At steps four and five, the ALJ found that, before February 15, 2015, Webb could not perform his past relevant work, but he could have adjusted to other work that existed in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 27-29. Specifically, the VE testified that Webb could have worked as a cleaner/housekeeper, laundry sorter, and cafeteria attendant. Tr. 29. Accordingly, the ALJ concluded that Webb was not

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

"disabled" under the Act before February 15, 2015, but that he became disabled on that date and continued to be disabled through his decision on November 25, 2015. Tr. 29-30.

**II.     Analysis**

Webb argues that remand is required because the ALJ improperly determined Webb's disability onset date. ECF No. 11-1 at 13-18. The Court disagrees.

A claimant's disability onset date is the first date that he is unable to engage in any substantial gainful activity due to a "medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Cabibi v. Colvin*, 50 F. Supp. 3d 213, 239-40 (E.D.N.Y. 2014) (citing 42 U.S.C. § 423(d)(1)(A)). In determining the onset date for a disability of nontraumatic origin, the ALJ must consider the claimant's alleged onset date, his work history, and the medical evidence. *Id.* at 239-40; S.S.R. 83-20, 1983 WL 31249, at *2 (S.S.A. Jan. 1983). The claimant's alleged onset date "should be used if it is consistent with all the evidence available." *Id.* at *2. If the alleged onset date is inconsistent with the record, "the ALJ has an affirmative obligation to adduce substantial evidence to support his [finding]." *Corbett v. Comm'r of Soc. Sec.*, No. 7:08-CV-1248, 2009 WL 5216954, at *13 (N.D.N.Y. Dec. 30, 2009). The ALJ's finding is supported by substantial evidence when he conducts a "thorough review" of the claimant's medical record. *See Credle v. Apfel*, 4 F. App'x 20, 23 (2d. Cir. 2001) (summary order). A thorough review entails evaluating medical opinions and formulating a final decision based on them. *Id.* at 23.

Here, the ALJ properly determined that Webb's disability onset date was February 15, 2015. In accordance with the standard outlined above, the ALJ first found that Webb's alleged onset date was inconsistent with his work history and other evidence, and then the ALJ thoroughly reviewed the record. Tr. 20-27.

5

The ALJ found that Webb's alleged onset date was inconsistent with his work history. Tr. 27. Specifically, the ALJ noted that Webb stopped working on February 15, 2015, which the ALJ deemed "the logical point to consider the change in [his RFC]." *Id.* This conclusion was proper, because the date the impairment made the claimant stop working "is frequently of great significance in selecting the proper onset date." S.S.R. 83-20, 1983 WL 31249, at *2. The ALJ also noted that, after this date, Webb's daily activities were consistent with his allegations of pain and his physicians' opinions. Tr. 27.

The ALJ also found that, before Webb stopped working, his alleged limitations resulting from his impairments were only partially credible. Tr. 23. The ALJ noted that Webb received conservative treatment and declined more invasive interventions.[4] Tr. 23-24. He also pointed out that, despite Webb's complaints that his symptoms were worsening, there was no corresponding objective evidence indicating that his impairments were getting more severe. Tr. 24. For example, the ALJ noted that an examination of Webb's knees on July 23, 2015 had essentially the same results as examinations from 2012 and 2013. *Id.*

The ALJ also noted that there was a gap in Webb's specialized treatment before he stopped working—he did not receive knee treatment between August 2013 and July 2015 or back treatment between January 2014 and August 2015. Tr. 24 (citing Tr. 346-59, 802-29). After Webb stopped working, however, he returned to specialized care, which the ALJ found to support Webb's allegations that his symptoms were becoming more severe. Tr. 27. Webb asserts that he continued treatment with his primary care physicians during these gaps, but the record shows only continuations of previous treatment and referrals to the Unity Spine Center. ECF No. 11-1 at 17;

---

[4] *See* 20 C.F.R. §§ 404.1529(c)(3)(v)-(vi), 416.929(c)(3)(v)-(vi) (effective June 13, 2011 to Mar. 26, 2017) (noting that the ALJ is entitled to consider treatment and other measures the claimant has received to relieve pain or other symptoms when he assesses the credibility of the claimant's statements).

Tr. 503-05, 741, 750, 770-72, 784-86. There is no evidence that Webb followed through with the referrals until August 2015. Tr. 24 (citing Tr. 517-23).

In addition to analyzing whether Webb's alleged onset date was inconsistent with his work history and other evidence, the ALJ thoroughly reviewed the record. Specifically, the ALJ examined opinions from numerous doctors, social workers, and medical experts. Tr. 15-27. The ALJ assigned weight to each opinion based on whether it provided specific functional limitations and was consistent with other record evidence.[5] *Id.*

The ALJ gave substantial weight to a June 2014 opinion from treating physician Dr. Antonova that said Webb could walk or stand for up to four hours, because it was supported by Webb's treatment history and physical examinations. Tr. 25. This persuaded the ALJ to conclude that Webb was capable of substantial gainful employment until February 15, 2015. Tr. 27.

The ALJ gave little weight to a March 2015 opinion from Dr. Hedayati, who completed an employability form for Monroe County, that said Webb could participate in activities for up to 40 hours with reasonable accommodations. *Id.* The ALJ discounted this opinion because it was rendered on a form governed by different standards than those used by the SSA and was inconsistent with other record evidence. Tr. 26-27.

Before February 15, 2015, the ALJ gave little weight to Dr. Antonova's August 2014 opinion that Webb had lifting, bending, and walking limitations because the opinion did not provide a function-by-function assessment and was inconsistent with Webb's daily activities. Tr. 25. Once Webb stopped working however, his activities were consistent with Dr. Antonova's August 2014 opinion, and therefore that opinion became entitled to substantial weight. Tr. 27.

---

[5] *See* 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4) (noting that the ALJ is entitled to give more weight to an opinion that is well-supported and consistent with the record as a whole).

7

Webb insinuates that the ALJ should have used a medical advisor to help determine the disability onset date. ECF No. 11 at 18. Webb cites S.S.R. 83-20, which states that the ALJ "should call on the services of a medical advisor" to assist in the onset date determination when it is necessary to infer the onset date from available evidence. ECF No. 11 at 18. (citing S.S.R. 83-20, 1983 WL 31249, at *3). However, the SSA recently released an emergency message—Clarification of Social Security Ruling 83-20—which explains that S.S.R. 83-20 does not require an ALJ to use a medical expert to determine the disability onset date. *See* Clarification of Social Security Ruling 83-20, EM-16036, *available at* https://secure.ssa.gov/apps10/reference.nsf/links/10172016104408AM (last visited Sept. 25, 2018). Although the message was effective on October 17, 2016, almost one year after the ALJ's decision in this case, it clarifies an existing rule and is not a new regulation. *Id.* Therefore, the ALJ properly interpreted S.S.R. 83-20 and did not err when he opted not to contact a medical advisor.

For the reasons stated, the Court finds that the ALJ properly determined Webb's disability onset date. The ALJ's decision adheres to the requirements of S.S.R. 83-20 and is supported by substantial evidence.

## CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 16) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court will enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 25, 2018
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge, United States District Court